## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | |
|---|---|
| **A.L. B/N/F M.L,** § | |
| § | |
| **PLAINTIFF,** § | |
| § | **Civil No. SA-16-CV-00307-RCL** |
| **v.** § | |
| § | |
| **ALAMO HEIGHTS INDEPENDENT** § | |
| **SCHOOL DISTRICT** § | |
| § | |
| **DEFENDANT.** § | |

## MEMORANDUM OPINION

Plaintiff A.L., through his next friend M.L. ("Parent"), filed this lawsuit against Alamo Heights Independent School District ("AHISD"), seeking relief under the Individuals' with Disabilities Education Act ("IDEA"), from the unfavorable decision rendered by a Special Education Hearing Officer Brenda Rudd ("Hearing Officer") on December 29, 2015. Pending before the Court is defendant's Motion for Summary Judgment [ECF No. 14]. For the reasons set forth below, the motion will be **GRANTED**.

## I.    BACKGROUND

### A.    The Individuals with Disabilities Education Act

The Individuals with Disabilities Education Act ("IDEA") was originally passed by Congress in 1970 and has been frequently amended since. *See generally* 20 U.S.C. § 1400 *et seq.* The IDEA's purpose is to ensure that "all children with disabilities have available to them a free appropriate public education" ("FAPE"), § 1400(d)(1)(A), and it provides both parents and schools with rights and remedies to accomplish this mandate. *See* §§1400–15. The law also imposes an affirmative obligation on school systems to "ensure that all children with disabilities residing in

the State . . . regardless of the severity of their disabilities, and who are in need of special education and related services, are identified, located, and evaluated." § 1412(a)(3)(A).

The IDEA is designed to promote a collaborative environment between parents of disabled children and their school districts. *See* § 1414. To comply with that goal, school districts must create an "individualized education program" ("IEP") for each disabled child, working with the student's parents, teachers, and counselors working together to determine what is best for the child. § 1414(d). Students must be evaluated every three years for continued eligibility under the IDEA, § 1414(a)(2)(B)(ii), and the school must draft comprehensive plans for long-term improvement as part of these evaluations. §§ 1414(d)(1)(A), 1414(b). Parents are entitled to request new evaluations or updates to IEPs for their child. § 1414(a)(2)(A)(ii). Should parents believe their child's IEP is not adequate, they may file a complaint for an "impartial due process hearing" in front of a Hearing Officer. § 1415(f). If a party objects to the ultimate decision of the Hearing Officer, that party may appeal in a state or federal court. *See* § 1415(i)(2)(A).

**B.  Facts of this Case**

Plaintiff A.L. is the child of M.L. ("Parent"). He attended and graduated from Alamo Heights High School in AHISD. In the third grade, A.L. began receiving accommodations pursuant to Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.*, for attention deficit hyperactivity disorder ("ADHD"). Admin. R. at 000667.[1] These accommodations included extended time on assignments, oral assistance on tests, access to class notes, access to a laptop, speech-to-text software, and re-teaching assistance for assignments and assessments below a grade of 70. *Id.* at 000702–38. With these accommodations providing support, A.L. earned better-than-average grades and passed his state standardized tests. *E.g., id.* at 000687, 000690.

---

[1] The Certified Administrative Record [ECF 6] from the DPH styled *A.L. b/n/f M.L. v. Alamo Heights Independent School District*, TEA Dkt. No. 287-SE-0515 (consolidated with TEA Dkt. No. 013-SE-0915) is cited herein as Admin. R. at [page number(s)]. The page numbers are Bates stamps located at the bottom right corner of each page. Where a record citation is to a condensed transcript, deposition page and line numbers will be included in brackets after the Bates stamp number.

But at the start of 10th grade, A.L. was struggling in his classes. *Id.* at 2617 [41:15-24]. In Parent's view, the school was not following A.L.'s 504 plan, leading to the boy's difficulties. *See id.* at 2619–2621 [43:14–45:5]. On October 20, 2014, Parent decided to request an evaluation for special education testing. *Id.* at 001323, 001284. The next day, AHISD's licensed specialist in school psychology contacted Parent, notifying her that the Student Intervention Team was considering the request and sought consent to observe A.L. in the classroom. *Id.* at 001283–87. On January 15, 2015, Parent consented to an initial full and individual evaluation ("FIE"). *Id.* at 001323–24.

To comply with A.L.'s wish to not miss class, the examiner evaluated A.L. in ten approximately 50-minute sessions during non-class periods. *Id.* at 000668. Additionally, the examiner collected information from parent interviews, teacher interviews, personal observation of A.L., behavioral assessments, intelligence scales, tests of cognitive abilities, and achievement tests. *Id.* at 000667–84. On March 30, 2015, the examiner concluded A.L. met the criteria for Special Education services as a child with Other Health Impairment due to ADHD. *Id.* at 685.

On April 16, 2015, Plaintiff was admitted into special education. *Id.* at 000618. AHISD's department of special education convened an initial Admission, Review and Dismissal ("ARD") Committee meeting. *Id.* at 000617. The ARD Committee developed a set of goals for A.L. for the 2014-2015 school year, *id.* at 000617–33, including:

- a self-advocacy goal, whereby A.L. was to communicate with his teachers weekly via email, *id.* at 000620;

- a task prioritization goal, whereby A.L. was to develop a priority plan for his weekly workload, *id.* at 000621;

- a task management goal, whereby A.L. was to merge the calendars from his different classes into a personal agenda, *id.* at 000622; and

3

- a study goal, whereby A.L. was to learn each teacher's website, print their calendar of activities for the week and report them to his study skills teacher. *Id.* at 000623.

Additionally, the ARD Committee adopted the following list of accommodations for A.L.: place markers, reading tests, digital text and books on tape, visual cues, notes, outlines, instructions, repeated reviews and drills, reading assistance, emphasis on major points, assignment notebooks, reduced assignments, spelling assistance, supplemental aids, mnemonic devices, blank graphic organizers, math charts, basic transcribing, word processors, speech to text, spelling and grammar devices, oral responses, study sheets, small group settings, reduced distractions, proximity controls, extended time for tests and assignments, reminders to stay on task, positive reinforcement, immediate feedback, and encouraged participation. *Id.* at 000624–25.

Although Parent disagreed with the recommended IEP, she allowed the plan to go into effect. *Id.* at 000628. By the end of the 2014–2015 school year, A.L. was passing all his classes, passed all administrations of the State of Texas Assessments of Academic Readiness ("STAAR"), and progressed on all his IEP goals. *Id.* at 000688, 000690, 001995–98.

Prior to the 2015–2016 school year, the ARD Committee convened again in August 2015 for A.L.'s annual review. *Id.* at 000650. Although Parent and her advocate disagreed with the recommended IEP, all committee members agreed to re-convene and to add an IEP accommodation of "re-teaching concepts if mastery not demonstrated." *Id.* at 000652. Because the IDEA requires an IEP to be in place at the start of every school year, AHISD issued a Prior Written Notice to Parent informing her that A.L.'s previous IEP—which expired at the end of the previous school year—would be continued and implemented until the ARD Committee agreed on new goals. *See id.* at 002485. When the ARD Committee re-convened on September 22, 2015, Parent requested an Assistive Technology evaluation for A.L, and AHISD agreed. *Id.* at 000658.

## II.    PROCEDURAL HISTORY

At the end of the 2014–2015 school year, Parent made an initial request for a due process hearing. *Id.* at 000024. After several amendments to the original complaint and a second request for a due process hearing, the two matters were consolidated and heard by the Hearing Officer on October 19-20, 2015 (the "DPH"). *A.L. b/n/f M.L. v. Alamo Heights Independent School District*, TEA Dkt. No. 287-SE-0515, at 1 (Dec. 29, 2015).

Relevant to this opinion, the Hearing Officer rejected plaintiff's attempts to call three expert witnesses during the DPH: Victoria Hatcher, Kristie Metting, and Sharon Collins. The hearing officer struck the testimony of Hatcher and Collins from the record due to plaintiff's failure to supplement or amend their deposition testimony in violation of Texas Rule of Civil Procedure 195.6.[2] *See* Admin. R. at 002741–42 [165:23–166:4] (Hatcher), 003054–57 [428:3–432:1] (Collins). Metting was not permitted to testify at all because she had not been included on plaintiff's October 9, 2015 pre-hearing disclosure. *Id.* at 002897 [321:25–322:6]. In post-hearing objections to these exclusions, plaintiff stated that Hatcher would have "provided information about what employers seek in employees[,]" *id.* at 000509, Collins "would have explained that ['lack of organization' and the 'inability to meet deadlines'] require a behavior improvement plan if the behaviors are causing the child to perform poorly in school[,]" *id.* at 000510, and Metting "would have testified that the goals and objectives should have addressed [sic] with a goal of decreasing the inappropriate behaviors and providing replacement behaviors and that the goals and objectives should be driven by the assessment and the Present Levels of Academic Achievement and Functional Performance." *Id.*

Ultimately, the Hearing Officer found that "Alamo Heights Independent School District provided [A.L.] with a free, appropriate public education." *Alamo Heights Independent School*

---

[2] The Texas Rules of Civil Procedure govern the proceedings of a special education DPH, and "the Texas Rules of Evidence . . . govern evidentiary issues." *See* 19 TEX. ADMIN. CODE § 89.1185(d).

*District*, TEA Dkt. No. 287-SE-0515, at 15. She ruled in favor of AHISD on every issue brought forward at the hearing. *See* Admin R. at 000016.

On March 28, 2016, plaintiff filed his complaint in this Court challenging that ruling. *See* Compl., ECF 1. Specifically, plaintiff raised two grounds for appeal: (1) that the Hearing Officer erred in excluding or striking the testimony of Hatcher, Metting, and Collins, *id.* ¶ 5.1, and (2) that the Hearing Officer's decision was not made on substantive grounds based on a determination of whether the child received a FAPE. *Id.* ¶ 5.2. AHISD now moves for summary judgment.

## III.    LEGAL STANDARD

Any party aggrieved by a decision of a hearing officer has the right to appeal the decision to the district court. 20 U.S.C. § 1415(i)(1)(A). On appeal, "the Court shall: (1) receive the records of the administrative proceedings; (2) hear additional evidence at the request of the party; and (3) grant such relief as it determines appropriate based upon the preponderance of the evidence." *Z.C. v. Killeen Indep. Sch. Dist.*, 2015 WL 11123347, at *5 (W.D. Tex. Feb. 17, 2015) (citing 20 U.S.C. § 1415(i)(2)(C)). An IDEA appeal "essentially asks the Court to decide the case based on the administrative record." *Caldwell Indep. Sch. Dist. v. L.P.*, 994 F. Supp. 2d 811, 817 (W.D. Tex. 2012). The hearing officer's "findings should be accorded 'due weight,' but the district court must arrive at an independent conclusion based on a preponderance of the evidence." *Id.* (quoting *Adam J. ex rel. Robert J. v. Keller Indep. Sch. Dist.*, 328 F.3d 804, 808 (5th Cir. 2003)). Thus, "a federal district court's review of a state hearing officer's decision is 'virtually de novo.'" *Id.* On the other hand, the "IDEA creates a presumption in favor of a school district's educational plan, placing the burden of proof, by preponderance of the evidence, on the party challenging it." *R.H. v. Plano Indep. Sch. Dist.*, 607 F.3d 1003, 1010–11 (5th Cir. 2010). The Court's "task is not to second guess state and local policy decisions; rather it is the narrow one of determining whether

state and local officials have complied with the Act." *White v. Ascension Parish Sch. Bd.*, 343 F.3d 373 (5th Cir. 2003).

Summary judgment is granted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party meets this burden, the non-moving party must come forward with specific facts that establish a genuine issue for trial. *ACE Am. Ins. Co. v. Freeport Welding & Fabricating, Inc.*, 699 F.3d 832, 839 (5th Cir. 2012). In coming to a decision, "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). But "[u]nsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment." *Brown v. City of Houston*, 337 F.3d 539, 541 (5th Cir. 2003).

## IV.   DISCUSSION

### A.   Justiciability

The first issue the Court addresses is whether the Court may hear this case at all. Since the DPH, A.L. has graduated from Alamo Heights High School and is now attending college. The Constitution grants jurisdiction to federal courts to adjudicate only "actual, ongoing controversies." *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477–78 (1990). When a court's decision can no longer affect the rights of the litigants in the case before it and would simply be "an opinion advising what the law would be upon a hypothetical state of facts[,]" the case becomes moot. *North Carolina v. Rice*, 404 U.S. 244, 246 (1971). On September 12, 2018, the Court ordered the parties to show cause as to why this case is not moot. Order to Show Cause, ECF 12.

As the Court pointed out, a student's high school graduation can moot a claim under the IDEA if the plaintiff has not requested relief in the form of damages or reimbursement. *See, e.g., Moseley v. Bd. of Educ. of Albuquerque Pub. Schs.*, 483 F.3d 689, 692–94 (10th Cir. 2007); *Brown v. Bartholomew Consol. Sch. Corp.*, 442 F.3d 588, 596–600 (7th Cir. 2006); *Thomas R.W. v. Mass. Dep't of Educ.*, 130 F.3d 477, 479–81 (1st Cir. 1997).

Plaintiff responded by arguing that "many courts have found that the students should receive additional services even if the student has passed the age cut-off for special education services or has graduated if the school denied the student a free and appropriate public education that includes transition services." Pl.'s Resp. to Order to Show Cause at 4, ECF 24. While nearly all the cases cited by plaintiff are inapposite or rest on a very different set of facts, it is true that the Fifth Circuit has recognized—as recently as two days after the order to show cause in this case—"that a claim for compensatory relief under IDEA may not be mooted by expiration of special education eligibility[.]" *Lauren C. by & through Tracey K. v. Lewisville Indep. Sch. Dist.*, 2018 WL 4376166, at *6 (5th Cir. Sept. 14, 2018). Plaintiff for the first time asks this Court to fashion an award where AHISD "could provide assistance with learning the skills by paying a tutor where the student now lives during his time in college." Pl.'s Resp. to Order to Show Cause at 5, ECF 24. Such a request for compensatory relief was not included in the original complaint. Despite that omission, the Court recognizes that in an appeal of Hearing Officer's decision, the Court may grant such relief at it deems appropriate. *See Killeen Indep. Sch. Dist.*, 2015 WL 11123347, at *5.

Since the Court could grant the non-mooted relief that plaintiff seeks, the Court will address the merits of plaintiff's claim.

**B.    The Hearing Officer made her decision on substantive grounds.**

The Court begins with plaintiff's second point of appeal—that the "Hearing Officer's decision is not in accordance with the standard established in 20 U.S.C. § 1415(f)(3)(E)(i)." Compl. ¶ 5.2. That statutory provision provides that "a decision made by a hearing officer shall be made on substantive grounds based on a determination of whether the child received a free appropriate public education." 20 U.S.C. § 1415(f)(3)(E)(i). Plaintiff seems to argue that because his expert witnesses were excluded, the Hearing Officer's decision was not made on a substantive ground. Nonmovant's Resp. Movant's Req. Summ. J. ¶¶ 34–35.

But plaintiff misunderstands the statute. The IDEA imposes procedural and substantive requirements on school districts and, as such, students with disabilities may allege procedural violations, substantive violations, or both. *See, e.g., Ruffin v. Houston Indep. Sch. Dist.*, 459 F. App'x 358, 360 (5th Cir. 2012); *Houston Indep. Sch. Dist. v. Bobby R.*, 200 F.3d 341, 345 (5th Cir. 2000). When read in context, the statutory provision cited by plaintiff simply sets forth the principle that "procedural defects alone do not constitute a violation of the right to a FAPE unless they . . . result[] in a loss of educational opportunity or infringe[] [on] parents' opportunity to participate in the IEP process." *See Adam J. ex rel. Robert J. v. Keller Indep. Sch. Dist.*, 328 F.3d 804, 812 (5th Cir. 2003). What plaintiff alleges is a procedural defect of an entirely different kind than the one discussed in the statute: one by the Hearing Officer during a DPH, not a procedural violation of the IDEA by AHISD. This argument fails.

**C.    The Hearing Officer's exclusion of plaintiff's experts was proper.**

The rest of plaintiff's appeal focuses on the exclusion of Hatcher, Metting, and Collins. Compl. ¶¶ 5.1. In fact, the entirety of plaintiff's complaint and response to the present motion focus on this procedural issue. *See generally* Compl.; Nonmovant's Resp. Movant's Req. Summ. J. Plaintiff states that he "cannot make additional arguments about the facts or the issues in this

matter since the expert witnesses were unable to testify." Nonmovant's Resp. Movant's Req. Summ. J. ¶ 45.

For one, the Court finds the Hearing Officer appropriately exercised her discretion in excluding the expert testimony. Under the Texas Rules of Civil Procedure, a party is *required* to amend or supplement any deposition testimony by an expert witness with respect to the expert's mental impressions or the opinions and the basis for them. *See* TEX. R. CIV. P. 195.6 (emphasis added); *see, e.g., In re Staff Care, Inc.*, 422 S.W.3d 876, 882 (Tex. App.—Dallas 2014, orig. proceeding); *Dyer v. Cotton*, 333 S.W.3d 703, 717 (Tex. App.—Houston [1st Dist.] 2010, no pet.). Plaintiff did not do so with respect to Hatcher or Collins, and the Hearing Officer properly excluded them. Admin. R. 002738:14–002737:14 (Hatcher); 003054–57 [428:3–432:1] (Collins).

For Metting, the issue was procedural fairness. She was not listed on the final witness list, and therefore, not deposed by AHISD. *Id.* at 002897–98 [321:25–322:6]. The Hearing Officer felt it would be unfair—despite Metting appearing on prior witness lists—to allow her to testify. *Id.* The Court finds this determination both reasonable and well within the Hearing Officer's discretion.

Moreover, plaintiff's claim that he "cannot make additional arguments about the facts or the issues in this matter since the expert witnesses were unable to testify" is simply incorrect. The IDEA specifically provides that the Court "shall hear additional evidence at the request of the party[.]" 20 U.S.C. § 1415(i)(2)(C)(ii). Courts in this district and other circuits have explicitly stated that this provision allows a party to fill "gaps in the administrative transcript owing to . . . an improper exclusion of evidence by the administrative agency[.]" *Marc V. v. North East Indep. Sch. Dist.*, 455 F. Supp. 2d 577, 587 (W.D. Tex. 2006) (quoting *Walker Cty. Sch. Dist. v. Bennett*, 203 F.3d 1293, 1298 (11th Cir. 2000); *see also Town of Burlington v. Dep't of Educ. for the Commonwealth of Massachusetts*, 736 F.2d 773, 791 (1st Cir. 1984). But here, plaintiff made no

request to supplement the administrative record, instead relying on short proffers as to what the experts would have said. Nonmovant's Resp. Movant's Req. Summ. J. ¶¶ 24–26. The Court is thus left to evaluate the Hearing Officer's decision armed with only the administrative record and plaintiff's woefully deficient offers of proof.

### D. A.L. did not carry his burden to prove that AHISD failed to comply with the IDEA.

Although plaintiff's listed "Points of Appeal" only relate to the exclusion of his experts, plaintiff asks this Court to "[e]nter judgment . . . in favor of [A.L.] on all issues raised at [the DPH.]" Compl. ¶ 7.1(B). The Court, therefore, will conduct a "virtually de novo" review of the administrative record to determine whether AHISD complied with the IDEA. The following issues were brought forward by A.L. at the DPH:

1. whether AHISD failed to identify A.L. as a child with a disability in need of special education;

2. whether AHISD made an appropriate education placement of A.L. in special education or related services under the IDEA;

3. whether A.L. was denied a FAPE;

4. whether AHISD failed to evaluate A.L. in all areas of suspected disability, specifically whether AHISD failed to conduct a functional behavior assessment, occupational therapy evaluation and functional vocational assessment;

5. whether AHISD failed to have an IEP in place for A.L. at the beginning of the 2015-2016 school year; and

6. whether AHISD has refused to provide appropriate supports and services to assist A.L. in the classroom. *Id.* at 1–2.

An "educational placement" under the IDEA refers to the student's educational program. *White ex rel. White v. Ascension Parish Sch. Bd.*, 343 F.3d 373, 379 (5th Cir. 2003); *Sherri A.D. v. Kirby*,

975 F.2d 193, 199 n.5 (5th Cir. 1992). The Court thus finds Issue 2 subsumed by plaintiff's claim that A.L. was denied a FAPE. Accordingly, other than Issue 2, the Court addresses each issue in turn.

> *1.     The Hearing Officer correctly found that AHISD met its Child Find requirements.*

School districts, like AHISD, are obligated to identify, locate, and evaluate children who are suspected of needing special education services. 34 C.F.R. § 300.111 (2006). This is commonly referred to as the "Child Find" duty. A school district's Child Find duty is "triggered when [it] has reason to suspect a disability coupled with reason to suspect that special education services may be needed to address that disability." *El Paso Indep. Sch. Dist. v. Richard R.*, 567 F. Supp. 2d. 918, 950 (W.D. Tex. 2008). Once the suspicions arise, the school district "must evaluate the student within a reasonable time after school officials have notice of behavior likely to indicate a disability." *Id.* (citation omitted). Upon review, Courts undertake a two-part inquiry to determine whether a school district has complied with its Child Find responsibilities:

> First, the Court must examine whether the local educational agency had reason to suspect that a student had a disability, and whether that agency had reason to suspect that special education services might be needed to address that disability. Next, the Court must determine if the local educational agency evaluated the student within a reasonable time after having notice of the behavior likely to indicate a disability.

*Id.*

Here, plaintiff has not demonstrated by a preponderance of the evidence that AHISD had reason to suspect that A.L. needed special education services. Plaintiff was passing all his courses (including multiple advanced placement or pre-advanced placement classes) and performing well on his STAAR exams at the end of 9th and 10th grade. This success in general education classes cuts against placement in special education. *See C.M. ex rel. Jodi M. v. Dep't of Educ., State of Hawai'i*, 476 F. App'x 674, 677 (9th Cir. 2012) (affirming decision of state agency that child "did

not require special education services because she was able to perform and compete successfully in general education classes"); *see also Alvin Indep. Sch. Dist. v. A.D. ex rel. Patricia F.*, 503 F.3d 378, 384 (5th Cir. 2007) (affirming district court's decision that a child did not need special education services, in part, because of his "passing grades and success" on standardized tests). Additionally, A.L. participated in his school's band, Admin R. at 002509, and Eagle Scouts, *id.* at 002623 [47:19–21], suggesting socialization with his peers. With no evidence presented to the contrary, the Court finds AHISD did not have reason to suspect A.L. needed special education services.

Furthermore, AHISD timely evaluated A.L. upon request by Parent. Upon receipt of a parent request for a special education evaluation, the school district must, not later than the 15th school day, provide the parent with an opportunity to give written consent for the evaluation or provide the parent with notice of its refusal to conduct the evaluation. 19 TEX. ADMIN. CODE § 89.10 11(b). Once the consent form is signed by the parent, state law requires a written report of a full individual and initial evaluation within 45 days. *Id.* § 89.1011(c)(1). Here, AHISD provided Parent with a consent form the day after her request for an evaluation. Admin. R. at 001284–87. The school district then completed the evaluation within 45 days of finally receiving written consent. Admin. R. 000667–84.

The Court agrees with the determination of the Hearing Officer: AHISD complied with its Child Find duty.

### 2. *A.L. was provided a FAPE.*

To satisfy the IDEA, a school district must provide "educational instruction specially designed to meet the unique needs of the handicapped child, supported by such services as are necessary to permit the child to benefit from the instruction." *Bd. of Educ. Of Hendrick Hudson Cent. Sch. Dist., Westchester Cty. v. Rowley*, 458 U.S. 176, 188–89 (1982). The law does not

require a school district to offer a student entitled to special education services the maximum educational opportunities possible, nor must a public agency offer an educational "program that maximizes the child's potential." *Klein Indep. Sch. Dist. v. Hovem*, 690 F.3d 390, 396 (5th Cir. 2012) (citing *Cypress-Fairbanks Indep. Sch. Dist. v. Michael F.*, 118 F.3d 245, 247–48 (5th Cir. 1997)). Instead, the "IDEA guarantees only a 'basic floor' of opportunity" that provides a child with "a meaningful educational benefit." *Hovem*, 690 F.3d at 396 (quoting *Rowley*, 458 U.S. at 188–89 (1982)); *see also Richardson Indep. Sch. Dist. v. Michael Z.*, 580 F.3d 286, 292 (5th Cir. 2009).

A school district fails to provide a FAPE under the IDEA if a child's program and services are (1) not in compliance with the IDEA procedures, and (2) not reasonably calculated to enable the child to received educational benefits. *Hendrick Hudson*, 458 U.S. at 206–07. "With respect to the first inquiry, procedural defects alone do not constitute a violation of the right to a FAPE unless they result in the loss of an educational opportunity." *Hovem*, 690 F.3d at 396 (citation omitted). For the second prong, the Fifth Circuit has identified four factors to guide the analysis: whether "(1) the program is individualized on the basis of the student's assessment and performance; (2) the program is administered in the least restrictive environment; (3) the services are provided in a coordinated and collaborative manner by the key 'stakeholders'; and (4) positive academic and non-academic benefits are demonstrated." *Cypress-Fairbanks*, 118 F.3d at 253.

Here, the factors weigh in favor of AHISD. First, A.L.'s educational program was individualized to his needs. The FIE was thorough and the recommendations listed were specifically geared towards A.L. *See* Admin. R. at 000681–82. Those recommendations were then incorporated into A.L.'s IEP through the goals related to self-advocacy, task prioritization, task management, and study skills were based on recommendations from his FIE. *Id.* at 000620–23. The accommodations provided were specifically designed to help meet A.L.'s unique

challenges. In addition to the long list of accommodations listed in the FIE report and incorporated into the IEP, *see id.* at *Id.* at 000624–25, 000681–82, the ARD Committee also incorporated A.L.'s physician's recommendations of preferential seating, use of an iPad or computer for writing assignments, extra time for tests, extra time for classwork and homework, and reduced assignments. *See id.* at 000624–25, 000641–42, 000685. With the implementation of these accommodations, A.L. passed all his classes. *Id.* at 000688, 002509.

Second, A.L.'s program was administered in the least restrictive environment. The IDEA requires that children with disabilities be educated alongside children who are not disabled to the maximum extent appropriate and feasible. *See* 34 C.F.R. § 300.114(a)(2). Here, A.L. was in all general education classes, and thus in the least restrictive environment.

Third, the services were provided in a coordinated and collaborative manner by district and school officials, as well as the plaintiff's mother and physician. In fact, the record shows regular communications between all the major stakeholders. For example, Monica Rodriguez, A.L.'s case manager, sent weekly emails to A.L., Parent, and his teachers, detailing items worked on in the Academic Support Center, past-due and upcoming assignments in each class, and concerns and reminders about work. *See, e.g.*, Admin R. at 001677–80, 001683–87, 001692–95, 001703–06, 001710–13, 001724–28, 001752. In fact, Parent testified that these weekly emails helped A.L. deal with stress and helped him know if there was anything he was missing. *Id.* at 002647 [71:2–9].

Fourth, and most crucially, the Hearing Officer is correct that "there is no question that [A.L.] received positive academic and non-academic benefits." *Alamo Heights Independent School District*, TEA Dkt. No. 287-SE-0515, at 14. As previously noted, Rodriguez's emails reduced A.L.'s stress. Admin. R. at 002647 [71:2–9]. Moreover, A.L. stated that his work with Rodriguez helped him turn in assignments on time more often. *Id.* at 001985. A.L. had no missing

assignments at the end of the first period in which he received special education services, compared with eight missing assignments the grading period before. *Id.* at 001259. The IEP progress reports also reflect progress towards the goals from A.L.'s IEP. *Id.* at 001994–98. This progress had a positive impact on A.L.'s grade. At the end of the 2014–15 school year, A.L. passed all his classes, including Pre-AP Spanish, Pre-AP English, Pre-AP Chemistry, and AP World History, while receiving no incompletes. R. vol. 2 at 000688, 000690, 001259. Similar achievement occurred in Fall 2015. *Id.* at 002509.

Considering the evidence and its bearing on these factors, the Court finds plaintiff failed to carry the burden of proving that A.L. was denied a FAPE. Coming to this conclusion, the Court considered what little it has been told about the testimony Hatcher, Collins, and Metting would have given, if permitted. But without more than the sentence-long, unsworn proffer provided for each witness, Admin. R. at 000508–10, the Court could not credibly give the experts' hypothetical testimonies any significant weight.

### 3. AHISD conducted the necessary evaluations required to satisfy the IDEA and provide A.L. with a FAPE.

Plaintiff argues that additional evaluations—a Functional Behavior Assessment ("FBA"), an Occupational Therapy Evaluation ("OTE"), and a Functional Vocational Assessment ("FVA")—were required for A.L. to receive a FAPE. The Court agrees with the Hearing Officer that plaintiff has not carried his burden on this point.

### a) FBA

The IDEA requires a child's IEP to "consider the use of positive behavioral interventions and supports, and other strategies, to address [the] behavior" of a "child whose behavior impedes the child's learning or that of others . . . ." 34 C.F.R. § 300.324(a)(2)(i) (2017). An FBA is required, "as appropriate," when a child has been "removed from the child's current placement" for more than ten days due to disciplinary infractions. § 300.530(d)(1)(ii) (2006); *see also R.P. ex rel. R.P.*

*v. Alamo Heights Indep. Sch. Dist.*, 703 F.3d 801, 813 (5th Cir. 2012). Here, as noted by the Hearing Officer, *Alamo Heights Indep. Sch. Dist.*, TEA Dkt. No. 287-SE-0515, at 10, there was no behavior that resulted in a change of placement under the discipline procedures. AHISD did not believe an FBA was necessary to serve A.L.'s needs and neither his teachers nor Parent requested an FBA. *See, e.g.*, Admin. R. 000619, 000636, 002694 [118:9–17]. A.L. was not denied a FAPE by AHISD's failure to conduct an FBA.

b)     <u>*OTE*</u>

Plaintiff brings forward no additional evidence that A.L. needed an OTE. The Court agrees entirely with the determination of the Hearing Officer: "Regarding occupational therapy assessment, [A.L.'s] doctor did not recommend such an assessment. [AHISD] did not determine a need for an occupation therapy assessment. Petitioner failed to bring evidence to show that [A.L.] needed an occupational therapy assessment." *Alamo Heights Indep. Sch. Dist.*, TEA Dkt. No. 287-SE-0515, at 10. Plaintiff has not demonstrated that he was denied a FAPE by the failure to conduct an OTE.

c)     <u>*FVA*</u>

Plaintiff alleges that AHISD should have conducted an FVA. Transition services are based on a child's needs and include an FVA only "if appropriate." 19 TEX. ADMIN. CODE § 89.1055; 34 C.F.R. § 300.43(a)(2)(v). Here, neither Parent nor advocate requested an FVA. *Alamo Heights Indep. Sch. Dist.*, TEA Dkt. No. 287-SE-0515, at 10. But moreover, there was little evidence that A.L. needed FVA. A.L. participated in chores at home, joined the band, was very active in rocketry, worked towards becoming an Eagle Scout, and now attends college. Admin. R. 000631, 000649, 002623 [47:19–24]; Pl.'s Resp. to Order to Show Cause at 5, ECF 24. The Court finds no basis to conclude that A.L. was denied a FAPE by AHISD's failure to conduct an FVA.

*   *   *

In sum, plaintiff has failed to carry its burden to demonstrate that AHISD failed to perform certain evaluations required by the IDEA.

### 4. An IEP was in place at the beginning of the 2015–2016 school year.

Plaintiff alleges that AHISD had no IEP in place at the beginning of the 2015-2016 school year. If true, this represents a procedural violation of the IDEA, which requires each public agency to have an IEP in effect for each child with a disability within its jurisdiction. 34 C.F.R. § 300.323(a). But after examining the record, the Court agrees with the Hearing Officer and finds that AHISD had an IEP for A.L. at the beginning of the 2015–2016 school year.

Under Texas law, "[w]hen mutual agreement about all required elements of the IEP is not achieved, the parent who disagrees must be offered a *single* opportunity to recess and convene the ARD committee meeting." 19 TEX. ADMIN. CODE § 89.1050(g)(1). The period of recess must not exceed ten school days unless the parties agree otherwise. *Id.* "During the recess, the ARD committee members must consider alternatives, gather additional data, prepare further documentation, and/or obtain additional resource persons who may assist in enabling the ARD committee to reach mutual agreement." *Id.* § 89.1050(g)(2). If after a recess the committee still cannot come to consensus, the school district must implement the IEP that it had determined to be appropriate for the student. *Id.* § 89.1050(g)(3).

Here, AHISD attempted to convene an ARD meeting at the end of the 2014–2015 school year, but Parent could not attend on any of the suggested dates. *See* Admin. R. at 00551–63. When the August 20th ARD meeting ended in disagreement, AHISD sent the Prior Written Notice stating that A.L.'s previous IEP would be continued and implemented until the ARD Committee agreed on new goals. Admin. R. at 002485. The ARD Committee continued to meet and try to reach a consensus. On September 11, 2015, the parties agreed to amend the IEP to add two accommodations. *Id.* at 000660. And when the ARD Committee re-convened on September 22,

2015, Parent requested—and AHISD agreed to—an Assistive Technology evaluation for A.L. *Id.* at 000658. Taken together, this evidence suggests to the Court that there was an IEP in place at the beginning of the 2015–2016 school year—the 2014–2015 IEP—and Parent had notice of its implementation. Parent received Prior Written Notice that the 2014–2015 IEP would remain in place and even agreed to subsequent amendments and supplementation of that IEP.

Furthermore, as the Hearing Officer recognized, a failure to have an IEP in place for A.L. at the beginning of the 2015-2016 school year would constitute a procedural violation of the IDEA. *See, e.g., C.H. v. Cape Henlopen Sch. Dist.*, 606 F.3d 59, 67–68 (3d Cir. 2010). A procedural violation of the IDEA does not amount to a deprivation of a FAPE unless it results in a loss of educational opportunity or infringement on a parent's participatory opportunity. *See Hovem*, 690 F.3d at 398. Here, Parent had ample opportunity to participate in the decision-making process and A.L. did not suffer a deprivation of educational benefit. *See supra* Part IV(D)(2).

> 5.    *AHISD did not refuse to provide appropriate supports and services to assist A.L. in the classroom.*

Plaintiff's final issue raised in the DPH concerned whether AHISD refused to provide appropriate supports and services to assist A.L. in the classroom. The record demonstrates it did not. This opinion has discussed at length the significant number of accommodations, support, and services A.L. received during his time at Alamo Heights High School. *See supra* Parts I(B), IV(D)(2). AHISD adopted all the suggested supports from A.L.'s physician. And the school district largely accommodated Parent in amending and supplementing the IEP. For example, at Parent's request, AHISD agreed to an Assistive Technology evaluation for A.L. *Id.* at 000658. Plaintiff has not carried its burden in demonstrating that AHISD refused to provide appropriate supports and services to assist A.L. in the classroom.

## V. CONCLUSION

After reviewing the administrative record, the Court affirms the judgment of the Hearing Officer in the DPH. As such, AHISD's Motion for Summary Judgment [ECF No. 14] will be will be **GRANTED**. The case will be terminated on dockets. A separate order will issue this date.

Date: 10/12/18

HONORABLE ROYCE LAMBERTH
UNITED STATES DISTRICT JUDGE